Charge of Discrimination

My information: Clarence McDonald III

    223 Ruben Avenue

    Saraland Alabama 36571

    251 378-8748 home, 251 391-5851 cell

My employer's information: ST Aerospace Mobile, Inc.

    2100 – 9th Street

    Brookley Complex

    Mobile, AL. 36615

    251 438-8888

There are over one-thousand employees that work at ST Aerospace.

All the events took place at my job and I am being discriminated because I am a man of color. This case is a retaliatory based case with racial discrimination.

    It all started back in 2008 when I reported to human resources (HR) about the racial graffiti and rebel flags on the facility. I used the company's open door policy to complain. The graffiti was on the bath room walls. Words like nigger and coon were written with a black marker. The graffiti was removed but some of the rebel flags are still on the facility. After I reported this to HR, they (HR) have always treated me indifferent.

    I applied for a different position within the company back in 2010 but did not get it. HR did the interviews and I know I was more than qualified for that position.

    On October 27, 2011 I turned in my appeal pertaining to the new pay scale and I was given a three day unpaid suspension on Nov. 1, 2011 for a bogus aircraft incident.

    I filed an EEOC Complaint with HR about the unpaid suspension on Nov 15, 2011 and on Nov. 16, 2011 the HR manager conducted a hostile investigation.

Charge of Discrimination

Back in 2008, I used the company's "Open Door Policy" to inform the company of racial graffiti and confederate battle flags on the facility. We, employees, are encouraged to use the "Open Door Policy". Under the company's complaint procedure, "all harassment or any other violation of the EEO/Harassment Policy must be promptly reported to the Manager, Human Resources. Reporting it to your manager or supervisor is not sufficient." So using the "Open Door Policy" I reported the racial graffiti and confederate battle flags to the H.R. Manager, Richard 'Dick' Wellington. He said he would look into it and did not advise me to put anything in writing.

Racial graffiti and confederate battle flags are offensive demeaning forms of oppression. The rebel flags are the single most important symbol of white supremacy. The rebel flags are invidious discriminatory symbols that glorifies and memorialize the exploitation of a certain group, people of color. This flag is an endorsement of slavery, when people of color were without any basic human rights. Furthermore, hate groups, skinheads, KKK, & others, used this symbol (confederate flag) to maim, hang, and oppress people of color. So for people of color, the confederate battle poses an imminent fear of a time when they (people of color) did not have any rights and the living conditions were inhuman. The confederate flags have been prevalent around the facility for years, which means the company secretly endorses racial discrimination. This secret sponsorship of the confederate flag communicates that all people are not created equal.

The Suspension

The major point that I want to make about my suspension is that they singled me out because of the whistle blowing back in 2008. My lead mechanic, Richard Engstrand, and I, Clarence McDonald, signed for step 7 on work card 26C433471001. He signed the main block and I signed the continuation form. The reason that I cannot sign the main block is that I do not have an A&P, airframe and power plant license. I was given three days off and my lead was not. I know that I performed that task correctly. But, hypothetically speaking, if the task was not done accordingly, then we both should have been given an unpaid suspension. My lead is white and I am black. They suspended me and not my lead (Richard).

The Repair Station & Quality Control Manual

DOC: RSQCM 5.1       REV: 25

   5.1.7 The responsibility for quality of workmanship shall rest with the mechanic performing the work and the Lead Mechanics and Supervisors who assign, direct and accept the work.

This means that when he signed for the work, he accepted the work. This also makes him liable. So why was he not given a suspension?

Charge of Discrimination

Secondly, my manager Terry Osborne was never a part of an investigation or was allowed to do an investigation. This is a direct violation of the company's discipline policy.

Policy and Procedure Manual

Doc: HR-109    Subject: Discipline

6.4    Investigation

6.4.1   Prior to a major Administrative Action being taken against any employee, the employee's immediate Manager will conduct an investigation.

6.4.2   The purpose of the investigation will be to accumulate and document all evidence and facts required to make a fair and impartial decision and subsequently to support the Company's action.

I have enclosed a blank copy of the disciplinary report HR 109-1. All disciplinary action is administered by human resources.

Third, my report stated I was given three days unpaid leave because the Zero Tolerance Policy RSQCM 3.2.2.1. That number is in fact not covered under the Zero Tolerance Policy. As you can see they willfully and deliberately discriminated against me, and this is all retaliation.

Illegal Hostile Interview

After they received my EEOC COMPLAINT letter on Nov. 15th they conducted a second mock investigation on Nov. 16th. I informed Karen, HR manager, while she was in her office that the VP Bill Hafner was part of the problem. She stated she would change things up. Later on I informed her once again that Bill Hafner was the problem and I was uncomfortable being interviewed by him. This time Al Williams, Library manager, and Terry Osborne, my manager, was present as witnesses. Bill Hafner was in the conference room while the rest of us were in the adjoining room. Karen started off this interview by asking about the pin. I told her that that issue was over due to the fact the company had already given me a three day unpaid suspension. So her demeanor became hostile, I told her I was done and asked if I could go back to work. She said no and that I had to answer the question. Then I asked her, how can I be given a suspension when my manager never given a chance to his part of the investigation? She stated, we'll get to that in a minute. Anyway this debate between her and I went in circles, it ended with us heading back into the hallway. There was a chair against the wall she told me you sit right here, sit, sit. As if I was a puppy. Then Karen took Al Williams and Terry Osborne in the conference room where Bill was waiting.

After I had informed her on more than one occasion that there was a major conflict between Bill and I, mainly because of the way he tried to belittle me during the Oct. 27th interview, I was still coerced to go in that conference room. Never the less while inside the conference room with Bill halfway through the interview he said to me, you don't read very well. I just shook my head slightly. After the interview finally ended Karen said they would be getting back with me, I am still waiting.

Charge of Discrimination

A few other employees have witnessed or experienced some form of racial discrimination or harassment.

    (1) <u>Alvin Kirsky</u> saw a few rebel flags and has other complaints.
    (2) <u>Kenneth Ross</u> saw rebel flags, did not get a raise and has other complaints.
    (3) <u>Latrina White</u> reported a racial incident.
    (4) <u>Alex Miller</u> was harassed on multiple occasions by the same manager.
    (5) <u>Armando Cruz</u> was harassed by the manager that harassed Alex.

I am respectively requesting a Notice of Right to Sue under Title VII.

*[Signature]*
*07/10/12*

4

| STATE OF ALABAMA<br>Unified Judicial System<br><br>Form C-10 Revised 3/5/08 | Case No.<br>12-0313-CG-C |
|---|---|
| ☒ District Court ☐ Circuit Court | |
| Style of case: Tielle VII<br>v. | CIVIL MOTION COVER SHEET<br>Name of Filing Party: Clarence McDonald III<br>plantiff |
| Name, Address, and Telephone No. of Attorney or Party (If Not Represented).<br>Clarence McDonald<br>223 Ruben Avenue<br>Saraland, AL 36571<br>Attorney Bar No.: | ☐ Oral Arguments Requested |

## TYPE OF MOTION

**Motions Requiring Fee**

- ☐ Default Judgment ($50.00)
- ☐ Joinder in Other Party's Dispositive Motion (i.e. Summary Judgment, Judgment on the Pleadings, or other Dispositive Motion not pursuant to Rule 12(b)) ($50.00)
- ☐ Judgment on the Pleadings ($50.00)
- ☐ Motion to Dismiss, or in the Alternative Summary Judgment ($50.00)
- ☐ Renewed Dispositive Motion(Summary Judgment, Judgment on the Pleadings, or other Dispositive Motion not pursuant to Rule 12(b)) ($50.00)
- ☐ Summary Judgment pursuant to Rule 56 ($50.00)
- ☐ Motion to Intervene ($297.00)
- ☐ Other _____ pursuant to Rule _____ ($50.00)

*Motion fees are enumerated in §12-19-71(a). Fees pursuant to Local Act are not included. Please contact the Clerk of the Court regarding applicable local fees.

☐ Local Court Costs $ _____

**Motions Not Requiring Fee**

- ☐ Add Party
- ☒ Amend
- ☐ Change of Venue/Transfer
- ☐ Compel
- ☐ Consolidation
- ☐ Continue
- ☐ Deposition
- ☐ Designate a Mediator
- ☐ Judgment as a Matter of Law (during Trial)
- ☐ Disburse Funds
- ☐ Extension of Time
- ☐ In Limine
- ☐ Joinder
- ☐ More Definite Statement
- ☐ Motion to Dismiss pursuant to Rule 12(b)
- ☐ New Trial
- ☐ Objection of Exemptions Claimed
- ☐ Pendente Lite
- ☐ Plaintiff's Motion to Dismiss
- ☐ Preliminary Injunction
- ☐ Protective Order
- ☐ Quash
- ☐ Release from Stay of Execution
- ☐ Sanctions
- ☐ Sever
- ☐ Special Practice in Alabama
- ☐ Stay
- ☐ Strike
- ☐ Supplement to Pending Motion
- ☐ Vacate or Modify
- ☐ Withdraw
- ☐ Other _____ pursuant to Rule _____ (Subject to Filing Fee)

Hearing Date: _____

Check here if you have filed or are filing contemporaneously with this motion an Affidavit of Substantial Hardship or if you are filing on behalf of an agency or department of the State, county, or municipal government. (Pursuant to §6-5-1 Code of Alabama (1975), governmental entities are exempt from prepayment of filing fees) ☐

Date: 7/10/12

Signature of Attorney or Party:
Clarence McDonald

This Cover Sheet must be completed and submitted to the Clerk of Court upon the filing of any motion. Each motion should contain a separate Cover Sheet.

**Motions titled 'Motion to Dismiss' that are not pursuant to Rule 12(b) and are in fact Motions for Summary Judgments are subject to filing fee.

# EEOC COMPLAINT

On October 26, 2011, the F.A.A. did their usual walk around inspection and the F.A.A. found that the thrust reverser (T/R) pin on the #1 engine HCU missing. This F.A.A. finding occurred on dayshift, a/c U.S. Airways A320 #812. This launched ST. M.A.E.'s investigation by the QA department pertaining to the missing HCU pin. As a result, I (Clarence McDonald) was interviewed twice by the QA department on two different days.

1st interview: I was called to the QA office to make a statement. Buddy (Eugene Pickerill) took my statement. It took me less than ten minutes to make my statement on form RSQCM 6.3-6 dated 26 Oct. '11. My lead mechanic, Richard Engstrand, was already making his statement when I arrived. I made my statement then went back to work. Our managers, Terry Osborne/Mark Eastman, did not play a role in this process. They have been my managers since the beginning of October '11, that's when I started night shift.

2nd interview: I was called up to the QA office on 27 Oct. 11. Brian Smith, the day shift lead mechanic apg, told me that QA wanted to see me. It was a few minutes after four. David Lee (QA manager), Terry Bailey (QA Director), and later Bill Hafner (V.P. operations) asked questions in this meeting. This investigation started off with we need another statement. Immediately I felt uncomfortable. I was nervous and felt intimidated when Bill Hafner said I believe you accomplished this work card incorrectly. This investigation took approximately two and a half hours, which reluctantly led to my second statement dated on 27 Oct. '11. My managers (Terry Osborne/Mark Eastman) were not called to participate in this meeting nor were my leads (Richard Engstrand, Alex Miller) called to participate in this meeting.

## EEOC COMPLAINT

I worked the next two days, which was Friday and Saturday. Then I took my normal days off, Sunday and Monday. I returned to work the Tuesday, Nov. 1, 2011, when I was informed by the dayshift manager, Aaron Henriques that I was to go to HR with him. Once in human resources I was told that I was being given three days unpaid suspension. My manager never participated in this investigation. The disciplinary report, HR 109-1, stated that I failed to make the #1 T/R unserviceable. That statement is misleading or deceitful. It insinuates that I did not install a HCU pin on the aircraft. This twisting of the facts is an act of collusion high in the ranks. It is speculation and circumstantial at best. The pin installation was verified by my relief lead Alex Miller and by my Lead mechanic Richard Engstrand.

Who removed the T/R's HCU pin that I installed on October 19, 2011? I asked this question on the HR 109-1 form but I have not received an answer and why the shift in the investigation? I also asked for a copy of that disciplinary report but was asked what do you need a copy of that for? The investigation was biased and the disciplinary report is discrimination.

This is all retaliation. Back in 2008 I complained to HR about racial graffiti and rebel flags on the facility. The racial graffiti was totally removed but only some of the rebel flags were removed. They are still on the facility to day Nov. 15 2011. They are not hidden from view, they are in plain sight. In 2010 I interviewed for a different position but did not get the position. In the latest event, I turned in an appeal on Oct. 27 '11 because I was very under rated on the new pay scale but I have not heard anything yet.

*[signature]*
7/10/12

2

EEOC Form 161 (11/09)    **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

To: Clarence McDonald, III
223 Ruben Avenue
Saraland, AL 36571

From: Jackson Area Office
100 West Capitol Street
Suite 207
Jackson, MS 39269

[ ] On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 425-2012-00223 | Antonio Jones, Investigator | (601) 948-8451 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

- NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Wilma Scott,    4/12/12
Area Director    (Date Mailed)

Enclosures(s)

cc: Karen Hempfleng
Human Resources Manager
ST AEROSPACE MOBILE, INC.
2100 9th Street
Mobile, AL 36615

Paul D. Myrick, Esquire
The Kullman Firm
1100 Riverview Plaza
63 South Royal Street
Mobile, AL 36602