IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CLARENCE McDONALD, III, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )  Civil Action No. 12-0313-CG-C |
| | ) |
| ST AEROSPACE MOBILE, INC. | ) |
| | ) |
| Defendant. | ) |
| | ) |

ORDER

This matter is before the court on defendant's motion for summary judgment. (Doc. 42). The parties have filed briefs and filed evidentiary materials in support of their respective positions, and the motion is now ripe for resolution. After careful consideration of the foregoing, the court concludes that the motion is due to be **GRANTED**.

I. FACTUAL BACKGROUND

The defendant, ST Aerospace Mobile, Inc. ("STA Mobile"), is a Federal Aviation Administration ("FAA")-approved aircraft repair station that performs aircraft inspection, maintenance, and repair on commercial passenger and cargo aircraft. The plaintiff, Clarence McDonald, III ("McDonald"), is an African-American male and an aircraft mechanic employed by STA Mobile. Doc. 14 at 1. He claims that STA Mobile suspended him without pay for three days in November 2011 because of his race and in retaliation for a 2008 complaint he directed to the company's

human resources department about racist graffiti written on a bathroom wall and about Confederate flags displayed in STA Mobile's facility. Id.; Doc. 42-3 at 45. McDonald maintains that he suffered worse treatment from STA Mobile's human resources department in the wake of his complaint, culminating in the November 2011 suspension. Id.

Boiled down to its essence, the factual background of McDonald's suspension concerns whether he used the correct tool to deactivate a thrust reverser on the jet engine of a commercial airliner. FAA regulations and STA Mobile require strict compliance with all maintenance steps, which are specified in documents called "job cards" and "aircraft maintenance manuals." Doc. 42-1 at 5. The job cards and aircraft maintenance manuals require mechanics to use tools specified with an individual tool number, which must be obtained from STA Mobile's tool room. Id. Under STA Mobile's "zero tolerance" policy, a mechanic can be subject to a three-day suspension without pay for the first offense if the mechanic violates these procedures. Id. To ensure compliance, STA Mobile employs quality assurance personnel to inspect all completed maintenance work and conduct investigations of any alleged violation of the mandated maintenance procedures. Id. at 6.

On November 1, 2011, STA Mobile suspended McDonald for three days without pay at the conclusion of a quality assurance investigation which found that he used the wrong "HCU lock-out pin" while he was performing

2

maintenance on the jet engine of a commercial airliner, and failed to obtain the correct lock-out pin from the STA Mobile tool room.  Id. at 14-15.  The HCU lock-out pin is a tool that is specified both in the aircraft's job cards and in its maintenance manual.  Id.; Doc. 42-8 at 5, 8, 13.  While the record is peppered with McDonald's contradictory denials and admissions of this violation, he has nevertheless admitted that he used a lock-out pin that was stowed onboard the aircraft, the so-called "ship set pin" or "onboard pin," instead of obtaining and using a lock-out pin from the tool room, as required.  Doc. 42-4 at 15; Doc. 42-4, Exhibit B, "Recording 2;" Doc. 42-2 at 25-26.  Accordingly, STA Mobile's Director of Maintenance, Alvin Bass, issued the three-day suspension after determining that McDonald violated several mandated maintenance procedures, including portions of the Aircraft Maintenance Manual and section 3.2.2.1 of the company's Repair Station & Quality Control Manual ("RS&QCM").  Doc. 42-9 at 3-4.

Approximately two weeks later, on November 15, 2011, McDonald submitted a written complaint to the human resources department.  In it, he alleged that his suspension was an act of retaliation for his 2008 complaint regarding racist graffiti found on a bathroom wall and about Confederate flag t-shirts and stickers that were worn and displayed by some STA Mobile employees.  Doc. 42-1 at 17.  The following day, November 16, McDonald attended a meeting to discuss his complaint with Karen Hempfleng, STA Mobile's Human Resources Manager, and Bill Hafner, STA Mobile's Vice

3

President of Operations.  Doc. 42-3 at  45.  According to McDonald, Hempfleng told him that she would look into his concerns and contact him. Id.  The day after this meeting, on November 17, STA Mobile conducted an inspection of all two million square feet of its facilities for any offensive symbols or graffiti.  Id. at 18-19.  The inspection found two small Confederate flag decals on two mechanics' toolboxes.  Id. at 20.  Both decals were removed and each mechanic was issued a counseling memorandum.  Id.

On December 28, 2011, McDonald filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC Charge"), repeating his allegation that his suspension was racially discriminatory.  Doc. 42-3 at 45.  Two weeks later, on January 12, 2012, Bass, who is himself African American, rescinded McDonald's suspension after determining that the disciplinary report issued to McDonald was poorly written and "possibly misleading."  Doc. 42-9 at 6.  Bass noted that McDonald had violated RS&QCM § 5.2, yet his disciplinary report cited only RS&QCM § 3.2.2.1, which was not covered by STA Mobile's zero tolerance policy.  Id. Accordingly, McDonald was paid full back pay for the three-day suspension, and the disciplinary report was removed from his personnel file and replaced with a counseling memorandum.  Id.

On April 12, 2012, the EEOC issued a right-to-sue letter to McDonald, stating that it was unable to conclude that the information he provided

4

established Title VII violations.  Doc. 43-3 at 48.  McDonald subsequently filed the instant lawsuit on May 14, 2012.

## II. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'"  Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting Anderson, 477 U.S. at 249).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Anderson, 477 U.S. at 249-250. (internal citations omitted).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  See Anderson, 477 U.S. at 251-252.  The moving party bears the burden of proving that no genuine issue of material fact exists. O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001).  In

evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor.  Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999).  "If reasonable minds might differ on the inferences arising from undisputed facts, then a court should deny summary judgment."  Hinesville Bank v. Pony Exp. Courier Corp., 868 F.2d 1532, 1535 (11th Cir. 1989) (citing Mercantile Bank & Trust v. Fidelity & Deposit Co., 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(a), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial."  Howard v. BP Oil Co., 32 F.3d 520, 524 (11th Cir. 1994)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)).  Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment."  Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  The non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response .... must be by affidavits or as otherwise provided in this rule be set out specific facts showing a genuine issue for trial."  Vega v. Invsco Group, Ltd., 2011 WL 2533755, *2 (11th Cir. 2011).  "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."

6

Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation and citation omitted).

### III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

Prior to filing a Title VII action, a plaintiff first must file a charge of discrimination with the EEOC. Gregory v. Georgia Dept. of Human Resources, 355 F.3d 1277, 1279 (11th Cir. 2004) (citing Sanchez v. Standard Brands, Inc., 431 F.2d 455, 460 (5th Cir. 1970)). The purpose of this exhaustion requirement "is that the [EEOC] should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts." Evans v. U.S. Pipe & Foundry Co., 696 F.2d 925, 929 (11th Cir. 1983); see also Wu v. Thomas, 863 F.2d 1543, 1548 (11th Cir. 1989).

In light of the purpose of the EEOC exhaustion requirement, courts have held that a "plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Alexander v. Fulton County, Ga., 207 F.3d 1303, 1332 (11th Cir. 2000) (internal quotation and citation omitted); Sanchez, 431

7

F.2d at 466 (noting that the allegations in a judicial complaint filed pursuant to Title VII may encompass any kind of discrimination like or related to the allegations contained in the charge).  Courts are nonetheless "extremely reluctant to allow procedural technicalities to bar claims brought under [Title VII]." Sanchez, 431 F.2d at 460-61.  As such, this Court has noted that " 'the scope of an EEOC complaint should not be strictly interpreted' " Id. at 465 (citation omitted).

STA Mobile argues that McDonald raised only the issue of his November 2011 suspension with the EEOC, and therefore failed to exhaust his administrative remedies with respect to his claims for retaliation, hostile work environment, and failure to promote.  Doc. 42-1 at 22; Doc. 45 at 2.  STA Mobile also argues that McDonald admitted to this failure at his deposition, agreeing with defense counsel that the box marked "retaliation" was not checked on the EEOC Charge form and agreeing further that the only substantive allegation on the face of the document was the discipline issue. Id. (citing Doc. 42-3 at 45).  STA Mobile also points to the fact that the EEOC investigator told McDonald that he would investigate only the discipline issue, id. (citing Doc 42-3 at 47), and thus argues that the other claims were not exhausted and are not ripe for judicial review.

The court finds that McDonald has failed to exhaust his administrative remedies with regard to his failure to promote claim, but has properly exhausted his administrative remedies with regard to his retaliation and

8

hostile work environment claims.  The EEOC interview notes from McDonald's file show that McDonald complained to the investigator about being disciplined in retaliation his complaints of confederate flags and various "racial graffiti" allegedly found throughout STA Mobile's facility. Doc. 42-3 at 46.  Thus, the EEOC had an opportunity to investigate the retaliation and hostile work environment allegations before McDonald pursued them in court.  Furthermore, the details provided on the face of the EEOC Charge sheet include the statement that "I complained about rebel flags on employee's [sic] toolboxes," which implicates the hostile work environment claim.  Id. at 45.  The court is also inclined to interpret this statement as broadly suggesting retaliation, given the fact that McDonald was not represented by counsel when he filed the EEOC Charge.  Thus, the court sees no reason why McDonald should be penalized when, acting pro se, he reported allegations of discriminatory suspension, retaliation and a hostile work environment to the EEOC and the EEOC opted to investigate the suspension only.

McDonald's failure to promote claim is a different story.  Neither the EEOC Charge sheet nor EEOC investigator's notes (Doc. 42-3 at 45-47) reflect any mention of the QA Records Auditor position, nor any suggestion that McDonald may have been passed over for a promotion.  See id.  Thus, there is no evidence that the EEOC had an opportunity to investigate before

9

McDonald filed suit on this claim.[1]  The court therefore finds that he has failed to exhaust his administrative remedies with regard to the failure to promote claim and STA Mobile's motion for summary judgment is due to be **GRANTED** with respect to that claim.

### IV. DISCRIMINATORY SUSPENSION AND RETALIATION CLAIMS

**A. Prima Facie Case**

Title VII prohibits an employer from discriminating against a person based on race.  42 U.S.C. §2000e-2(a)(1).  The plaintiff bears the initial burden of establishing a prima facie case of racial discrimination, which he may do by demonstrating that (1) he is a member of a protected class (here, African-American); (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) his employer treated him less favorably than similarly situated individuals outside of his protected class.  Alvarez v. Royal Atlantic Developers, Inc., 610 F.3d 1253, 1264 (11th Cir. 2010).  See also Holifield v. Reno, 115 F.3d 1555 at 1561-62 (11th Cir. 1997).

Title VII also forbids an employer from retaliating against an employee who has engaged in statutorily-protected activity, such as opposing racial discrimination.  See Burlington Northern & Santa Fe Railway Co. v. White,

---

[1] The court does note that McDonald made a passing reference to his having unsuccessfully "interviewed for a different position" in a document titled "EEOC Complaint" which was attached to his amended complaint.  Doc. 14 at 6-7; Doc. 42-3 at 33-35.  However, the record evidence indicates only that McDonald only submitted this document to STA Mobile pursuant to the company's EEO policy on or around November 15, 2011.  See Doc. 42-2 at 4.  There is no evidence that he submitted this "EEOC Complaint" as part of the EEOC charge on December 28, 2011.  See Doc 42-3 at 45.

548 U.S. 53, 59 (2006).  As with a discrimination claim, a plaintiff alleging retaliation bears the initial burden of establishing a prima facie case, which he may do by demonstrating that (1) he engaged in statutorily-protected activity; (2) he suffered a materially adverse action; and (3) there was some causal relation between these two events.  Dixon v. The Hallmark Companies, Inc., 627 F.3d 849 (11th Cir. 2010).  Thus, both McDonald's discriminatory suspension claim and his retaliation claim require McDonald to establish that he suffered a materially adverse employment action.

The court finds, however, that the November 2011 suspension cannot qualify as an "adverse employment action" for Title VII purposes because it was rescinded two months later on January 17, 2012, with the original disciplinary report removed from McDonald's personnel file and McDonald receiving full back pay, including full overtime pay that he would have earned during the three days that he was suspended.  Doc. 42-2 at 35.  In the absence of any tangible harm to McDonald, a rescinded suspension cannot qualify as an adverse employment action for purposes of a Title VII analysis.  See generally Crawford v. Carroll, 529 F.3d 961, 973 (11th Cir. 2008); Gupta v. Florida Board of Regents, 212 F.3d 571, 588 (11th Cir. 2000) ("An action which, it turns out, had no effect on an employee is not an 'adverse' action.") overturned on other grounds by Burlington Northern, supra.; Pennington v. City of Huntsville, 261 F.3d 1262, 1267 (11th Cir. 2001) (noting that Title VII retaliation case law "indicates that the decision to reprimand or transfer an

11

employee, if rescinded before the employee suffers a tangible harm, is not an adverse employment action").

McDonald argues that he did suffer tangible harm, in the form of a counseling memorandum he received after his suspension was rescinded, noting that it "was a negative performance counseling." Doc. 44 at 21. However, McDonald did not proffer any evidence that the counseling memorandum constituted a formal reprimand or triggered any tangible form of adverse action such as loss in benefits, ineligibility for promotional opportunities, or more formal discipline.  In fact, courts in the Eleventh Circuit have repeatedly held that counseling memoranda are not adverse employment actions and do not result in tangible harm.  Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1240 (11th Cir. 2000); Austin v. City of Montgomery, 196 Fed. Appx. 747, 753 (11th Cir. 2006).

Therefore, because McDonald suffered no tangible harm, the court finds that the rescinded November 2011 suspension was not an adverse employment action and, therefore, finds that McDonald cannot make a prima facie showing of discrimination or retaliation on that basis.

Even if McDonald were able to establish that he suffered an adverse employment action, his discrimination and retaliation claims would still fail. The discrimination claim would still fail because McDonald failed to identify a similarly-situated person outside of his protected class whom STA Mobile treated more favorably.  While McDonald did assert in his EEOC Charge

12

(Doc. 42-3 at 45) that a white aircraft mechanic named Jamie Logan committed the same violation yet suffered no punishment, McDonald nevertheless admitted at his deposition that he has no personal knowledge of what Logan may or may not have done. Doc. 42-2 at 14. Thus, McDonald has not established that he and Logan were similarly situated.

McDonald's retaliation claims would also fail even in the presence of an adverse employment action because he has offered no evidence whatsoever of a causal connection between his 2008 complaint and his 2011 suspension.[2] To the contrary, McDonald admitted at his deposition that he had no firsthand knowledge that anyone who prepared his 2011 disciplinary report had any knowledge of his 2008 complaint to the human resources department, or any subsequent complaint. (Doc. 42-2 at 28). McDonald has also failed to identify any acts other than his suspension which constitute the "worse treatment" he alleges that he faced after 2008.

## V. HOSTILE WORK ENVIRONMENT

### A. Statement of the Law

"A hostile work environment claim under Title VII is established upon proof that 'the workplace is permeated with discriminatory intimidation,

---

[2] The court disregards McDonald's assertion, made in his opposition to summary judgment, that "I made a complaint in 2008, 2009, 2010, and 2011" regarding Confederate flags and racist graffiti. Doc. 44 at 2, ¶ 6. Firstly, this assertion contradicts the amended complaint, which references only the 2008 complaint. Doc. 14 at 2. Secondly, this assertion contradicts some of the very evidence McDonald cites for support. For example, his "EEOC Complaint" (Doc. 42-3 at 33-35) references the 2008 complaint only, while his EEOC Charge (Doc. 42-3 at 45) does not specify any date at all.

13

ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir, 2002) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). A plaintiff must show that (1) he belongs to a protected group, (2) he has been subject to unwelcome harassment, (3) the harassment was based on a protected characteristic of the employee, such as race or national origin, (4) the harassment was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," and (5) the plaintiff's employer is responsible for such an environment, either directly or vicariously. Miller, 277 F.3d at 1275.

In order to determine whether harassment meets the "severe and pervasive" requirement, the court must consider an additional four factors in order to evaluate the objective severity of the harassment, including (1) the frequency of the conduct, (2) the severity of the conduct, (3) whether the conduct was physically threatening or humiliating, or a mere offensive utterance, and (4) whether the conduct unreasonably interferes with the employee's job performance. Medoza v. Borden, Inc., 195 F.3d 1238, 1246 (11th Cir. 1999). The employee must establish not only that he subjectively perceived the environment as hostile, but that a reasonable person would perceive the environment to be hostile and abusive. Barrow v. Georgia Pacific, Inc., 144 Fed. Appx. 54, 56 (11th Cir. 2005).

Furthermore, "[t]his is not, and by its nature cannot be, a mathematically precise test." Harris, 510 U.S. at 22. Whether a work environment is hostile can be determined only by looking at all the circumstances. Id. at 23.

**B. Analysis**

McDonald alleges that in 2008, he reported to STA Mobile's human resources department the existence of certain racist, offensive graffiti written on the bathroom walls with a marker ("[w]ords like nigger and coon"), as well as Confederate flags emblazoned on certain t-shirts and toolbox stickers around the STA Mobile facility, all of which understandably offended him. Doc. 14 at 1-2. McDonald's amended complaint alleges that "[t]he graffiti was removed but some of the rebel flags are still on [sic] the facility." Id. At his deposition, however, McDonald admitted that after his 2008 complaint, both the graffiti and rebel flags were removed. Doc. 42-2 at 6-7.

McDonald also submitted the declaration of Alvin Kirsky, an STA Mobile employee who stated that he "[has] seen countless rebel confederate flags on the company premises since I have been an employee at STA Mobile Inc. [sic] some of which had been displayed for several months." Doc. 44-1 at 12. However, the severity alleged in the Kirsky declaration ("countless" Confederate flags) does not comport with McDonald's admission that all or most of the Confederate flags were removed shortly after his 2008 complaint. Doc. 42-2 at 6-7 (Q: "The Confederate flags you call the rebel flags that you

15

reported, were they removed?" A: (McDonald) "Yes, sir."); see Doc. 14 at 1 ("[t]he graffiti was removed but some of the rebel flags are still on [sic] the facility."). The Kirsky declaration is also out of step with the fact that between McDonald's 2008 complaint and his 2010 EEOC Charge, he made no additional complaints regarding Confederate flags being displayed at the STA Mobile facility. Doc. 42-2 at 7.

Additionally, McDonald attached to his opposition brief several photocopies of photographs depicting items emblazoned with the Confederate flag. Doc. 44-1 at 15-18. Yet McDonald has not authenticated any of these photographs, and the court has no way of knowing whether he personally took the photographs, whether they were taken at the STA Mobile facility, and if so, when. See Doc. 44 and Doc. 44-1.

Even setting aside these evidentiary concerns, and accepting for purposes of summary judgment that all of McDonald's allegations regarding the Confederate flags and racist graffiti are true, the court finds that they still do not establish that STA Mobile was "permeated with 'discriminatory intimidation, ridicule, and insult' that [was] 'sufficiently severe or pervasive to alter the conditions of [McDonald's] employment and create an abusive working environment." Barrow, 144 Fed. Appx. at 57-58 (quoting Harris, 510 US at 21). The incidents that McDonald complains of were not especially severe when compared with conduct that the Eleventh Circuit has found to fall short of severe harassment. For example, the Eleventh Circuit found in

16

Barrow that a group of African-American plaintiffs failed to establish a hostile working environment despite testimony that some plaintiffs saw Confederate flag stickers on toolboxes and hard hats; saw the letters "KKK" on a bathroom wall and on a block-saw console; saw a noose hanging in another employee's locker; and that one of the plaintiffs was called "nigger" three times in one year by a shift superintendent. Id. at 57. Additionally, the conduct McDonald complained of was neither physically threatening nor particularly humiliating, nor has he alleged that it interfered with his ability to perform his duties at work. While McDonald may have been understandably offended at the sight of Confederate flags or stickers, such allegations simply do not meet the standard of severe and pervasive harassment set forth by the Supreme Court or the Eleventh Circuit and which are necessary to establish a prima facie case of hostile working environment pursuant to 42 U.S.C. §1981.

  The same holds true with regard to the graffiti in the bathroom. The words "nigger" and "coon" certainly qualify as offensive utterances; however, the fact that these words were removed immediately after McDonald complained to STA Mobile's human resources department, and the fact that McDonald complained on one occasion, do not tend to prove that STA Mobile was "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [McDonald's] employment and create an abusive working environment." Barrow, at 54.

17

## VI. CONCLUSION

Upon a thorough analysis of all matters presented, the court concludes that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law.  Therefore, STA Mobile's motion for summary judgment (Doc. 42) is **GRANTED** as to all claims.

**DONE** and **ORDERED** this 12th day of March, 2013.

/s/ Callie V.S. Granade
**UNITED STATES DISTRICT JUDGE**